Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 2001 C 4183 | **DATE** | February 14, 2002 |
| **CASE TITLE** | *United States ex rel. Paul Modrowski (B-65896) v. Kenneth R. Briley, Warden* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

| | |
|---|---|

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Petitioner Paul Modrowski's motion to reconsider the dismissal of his petition for a writ of habeas corpus is denied. On the court's own motion, the court revisits its decision to file the motion and accompanying affidavits under seal. The clerk is directed to unseal these materials. The court also declines to issue a certificate of appealability. The clerk is directed to forward a copy of this order to the Seventh Circuit. Enter memorandum opinion and order.

(11) ■ For further detail see order attached to the original minute order.

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| X | Notices mailed by judge's staff. | | FEB 19 2002 date docketed | |
| | Notified counsel by telephone. | | | 17 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | mailing deputy initials |

02 FEB 15 AM 9:22

FILED 10

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States ex rel. ) | **DOCKETED** |
| ) | |
| PAUL MODROWSKI (B-65896), ) | FEB 1 9 2002 |
| ) | |
| Petitioner, ) | No. 01 C 4183 |
| ) | |
| v. ) | |
| ) | Judge  Blanche M. Manning |
| KENNETH R. BRILEY, Warden, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Paul Modrowski, represented by counsel, filed his petition for habeas corpus under 28 U.S.C. § 2254 on June 1, 2001, one day after the expiration of the one-year limitations period provided by 28 U.S.C. § 2244(d). The petition was also deficient in numerous respects. Directed to file an amended petition and to show cause why the petition should not be dismissed, petitioner's former counsel submitted an unsworn statement stating that he had spoken with an unidentified member of the clerk's office staff on the due date and was told that a petition postmarked on that date would be timely. Petitioner asked the court to find that these circumstances equitably tolled the limitations period.

By order dated July 24, 2001, the court declined to do so, stating that petitioner's former counsel was clearly negligent in relying on a last minute call to an unnamed court employee, as the law was clear that only incarcerated petitioners, not their attorneys, were entitled to claim the benefit of the "mailbox rule" that deems a petition filed when mailed. *Jones v. Bertrand*, 171 F.3d 499 (7th Cir. 1999). As the law is also clear that an attorney's negligence, even gross negligence, is not grounds for equitable tolling, *Taliani v. Chrans*, 189 F.3d 597, 598 (7th Cir. 1999), the court dismissed the petition as untimely.

Petitioner, represented by new counsel, filed a timely motion to reconsider under Rule 59, Fed.R.Civ.P., presenting new and different grounds for equitable tolling. Petitioner now



asserts that his former counsel was *unable* to file the petition on time because he was disabled by mental illness. Petitioner's motion to reconsider is supported by affidavits of petitioner's mother and petitioner's former counsel.[1] Petitioner's former counsel states that he was suffering from severe depression as a result of grievous personal losses, serious physical illness requiring hospitalization, and the disintegration of his law practice in the preceding year. He stated that "as a result of my mental, physical and emotional state, I literally felt incapable of bringing the petition to the courthouse. I believe that my mental, physical and emotional condition, as described in this affidavit, undermined my judgment and resulted in the late filing of the Modrowski habeas petition." Both petitioner's former counsel and petitioner's mother state that petitioner's former counsel did not disclose his mental illness to her. Petitioner's former counsel assured her that he would prepare the habeas petition, and that she (and presumably the petitioner) relied on his assurances.[2]

Petitioner contends that just as the mental incapacity of the petitioner would be grounds for equitable tolling, so should the mental incapacity of petitioner's former counsel. "Since it was not within [counsel's] power to timely file the petition, this Court should also conclude that it was not within the power of his client, Petitioner, to have done so."

Respondent disagrees that petitioner's motion establishes that petitioner's former counsel was truly disabled. Respondent points out that counsel's calling the clerk's office the day the petition was due argues against a finding that he was incapacitated, and notes that counsel was able to produce a timely response to the court's order to submit an amended petition and show

---

[1] Because of the personal nature of the disclosures in the affidavits, petitioner's new counsel was permitted to file the motion and affidavits under seal. On reconsideration, the court directs the clerk to unseal petitioner's motion and accompanying affidavits. "What happens in the halls of government is presumptively public business. Judges deliberate in private but issue public decisions after public arguments based on public records. ... Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification." *Union Oil Co. of Calif. v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000). Petitioner's former attorney's sufferings have affected his functioning in his public capacity as an officer of this court. This is a matter of public interest, apart from the public's right to know the basis of the court's ruling.

[2] Although petitioner's former counsel states in his affidavit that he called the clerk's office on the date the petition was due, he does not repeat the statement of his earlier filing that he was told that the petition would be timely if mailed on that day.

2

cause for his late filing. Respondent also strongly disagrees with petitioner's premise that his former counsel's disability should be imputed to him. Since petitioner was not himself disabled, respondent argues, he is responsible.

The court agrees that petitioner's former counsel's affidavit, which amounts to no more than a layperson's self-diagnosis, would not support a finding of mental incapacity. As the court reads the affidavit, petitioner's former counsel was suffering from extreme fatigue and did not take the steps a reasonable attorney would have taken under the circumstances, a classic case of negligence, however understandable in a human sense it might be. Nevertheless, since a life sentence is at stake, if the factual question of counsel's mental incapacity were determinative the court would consider giving petitioner an additional opportunity to demonstrate it. The court will accordingly assume at this point that petitioner can adequately show that his former counsel was disabled on the date the petition was due.

For present purposes the court also accepts -- and respondent does not appear to dispute -- that whatever the degree of counsel's incapacity, it was not communicated to the petitioner. In other words, petitioner exercised reasonable diligence, and in no moral sense can the late filing be considered his fault.

Nevertheless, the court is constrained to agree with respondent that under the law as it stands, counsel's capacity or incapacity on the due date is ultimately beside the point. The court can find no principled distinction between a negligent attorney, for whose inaction the client is undeniably responsible, and a temporarily incapacitated attorney. Petitioner has not persuaded the court that it has discretion to find equitable tolling here.

As this court stated in its earlier opinion, quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000), equitable tolling of the limitations period imposed by 28 U.S.C. § 2244(d) requires a showing that "extraordinary circumstances far beyond the litigant's control must have prevented timely filing." This is consistent with the general federal common-law standard for equitable tolling: "[I]f the plaintiff because of disability, irremediable lack of information, or other circumstances beyond his control just cannot reasonably be expected to sue in time, the statute of limitations will be tolled until he is able

3

through the exercise of proper diligence to file his suit." *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996). It is accepted that an attorney's negligence is not grounds for equitable tolling. *Taliani*, 189 F.3d at 598.

Under that standard, petitioner is not entitled to equitable tolling. There is no question that petitioner has alleged "extraordinary circumstances." Nevertheless, while his former counsel's mental illness was beyond his control, it did not, in the strict sense of the word, prevent him from filing his petition on time. Petitioner's counsel's disability did not prevent him from engaging another lawyer or filing a petition himself. For this reason petitioner's analogy to the situation where a petitioner's *own* mental disability "prevents [him] from managing his affairs and thus from understanding his legal rights and acting upon them," *Miller*, 77 F.3d at 191, breaks down. A mentally disabled person can neither prepare a habeas petition or engage an attorney to prepare one for him, but it always remained possible for petitioner to do so.

If instead of looking at whether petitioner was "prevented" from filing, we ask, in *Miller*'s language, whether due to "circumstances beyond his control" he "cannot reasonably be expected to sue in time," we must ask at what point that reasonable expectation is determined. A week before the due date petitioner could reasonably have been expected to file on time. On the due date his attorney became disabled, and we assume for the moment that his extreme depression was as disabling as being hit by a bus. At that point, an omniscient observer would no longer have a reasonable expectation that the petition would be filed on time. But that expectation would have been no less destroyed the moment our omniscient observer saw that petitioner's counsel had forgotten to put the petition in his briefcase on his way to the courthouse, or committed any number of negligent acts that would not excuse late filing. We have to conclude that petitioner here could have reasonably been expected to file on time.

Of course, in a real sense petitioner was "prevented" by his reliance, (which we presume reasonable), on his attorney's assurances. But this kind of "prevention" is indistinguishable from the usual case of attorney negligence. Clients rely on their attorneys to do what they are supposed to do. Presumably the petitioner in *Taliani, supra,* reasonably relied on his attorney

4

to calculate the deadline correctly, "preventing" him from filing a habeas petition on his own and meeting the deadline. If petitioner's former counsel had merely forgotten the due date, instead of being incapacitated by depression, petitioner would have been no more, and no less, "prevented" from filing on time.

The court acknowledges that there is some authority tending to support petitioner's position. In *Calderon v. United States District Court (Beeler)*, 128 F.3d 1283 (9th Cir. 1997), the Ninth Circuit affirmed the district court's application of equitable tolling. The Ninth Circuit acknowledged that equitable tolling is proper only where "'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Id.* at 1288. As recounted by the Court of Appeals, the petitioner's lead counsel had diligently pursued the preparation of his habeas petition, but had withdrawn after accepting other employment and much of the work product he left behind was not usable by his replacement. The court called this a "turn of events over which [petitioner] had no control," and found these "extraordinary circumstances" made equitable tolling appropriate. *Id.* at 1289.

However, the Ninth Circuit recently limited the reasoning of *Beeler* to capital cases, although this limitation is not at all evident from the language of *Beeler* itself. In *Frye v. Hickman*, 258 F.3d 1036 (9th Cir. 2001), the court pointed out that because *Beeler* was a capital case, the petitioner had a statutory right to have an attorney prepare his habeas petition. But because there is no right to counsel in non-capital habeas proceedings, the court reasoned, "[t]he dereliction of retained counsel therefore did not render it impossible for the petitioner to exercise his statutory or constitutional right to file for federal habeas relief. Accordingly there is no basis for equitable tolling." *Id.* at 1038.

Petitioner cites *Davis v. Johnson*, 158 F.3d 806, 809 (5th Cir. 1998), but it offers negligible support. *Davis*, again, was a capital case. The petitioner had requested appointment of counsel because his state habeas counsel had become incapacitated, and moved for an extension of time to file his habeas petition. The district court appointed counsel and granted an extension of time that was itself repeatedly extended. When the petition was filed, the district court denied relief both because it believed that it had lacked discretion to extend the

deadline for filing the petition and because it found the petition's claims meritless. The Fifth Circuit, confronted with the question whether equitable tolling was available, held that it was, and found that the district court arguably had discretion to extend the filing deadline. It then affirmed the dismissal on the merits. As a death-penalty case, *Davis* is distinguishable on the grounds *Frye* distinguished *Beeler*, and in any event any pronouncement that attorney incapacity justifies equitable tolling is dictum.

The court is unaware of any case in which a statute of limitations has been tolled because an attorney became disabled at the last minute and was unable to get a suit on file. The court has found a few instances where courts have granted relief under Rule 60(b) when an attorney's mental disability had led to a dismissal for failure to prosecute or for failure to respond to a summary judgment motion. Such cases are of some relevance, because, as in the case of equitable tolling, attorney negligence is normally not grounds for relief under Rule 60(b). *See United States v. Cirami*, 563 F.2d 26 (2d Cir. 1977); *L. P. Steuart, Inc. v. Matthews*, 329 F.2d 234 (D.C. Cir. 1964); *P.T. Busana Idaman Nurani v. Marissa by GHR Industries Trading Corp.*, 151 F.R.D. 32 (S.D.N.Y. 1993). But to the extent that cases under Rule 60(b) are relevant, *Cirami* has not been cited by the Seventh Circuit, while *L.P. Steuart* has been rejected. *See Dickerson v. Bd. of Education of Ford Heights*, 32 F.3d 1114, 1118 (7th Cir. 1994).[3/] They accordingly give petitioner little support.

In an opinion from this district, *In Re Robinson*, 124 B.R. 757 (N.D. Ill. 1991)(Duff, J.), the court granted relief under Rule 60(b) on grounds of "unconscionable" attorney neglect, where the debtor's attorney not only had utterly neglected his client's interests, but had actively misled the client. Yet this decision appears inconsistent with the Seventh Circuit's subsequent opinion in *United States v. 7108 West Grand Avenue*, 15 F.3d 632, 634-35 (7th Cir.), *cert. denied*, 512 U.S. 1212 (1994), holding that whether an attorney's conduct is characterized as

---

[3/] "[A]lthough one court has ruled that where counsel's personal problems, including the serious illness of his wife, caused him to grossly neglect a diligent client's case, a district court may grant relief under Rule 60(b), *see L.P. Steuart, Inc. v. Matthews*, 329 F.2d 234, 235-36 (D.C.Cir.), *cert. denied*, 379 U.S. 824, 85 S.Ct. 50, 13 L.Ed.2d 35 (1964), the Seventh Circuit has never so held. Indeed, this court has recently held that counsel's negligence, whether gross or otherwise, is never a ground for Rule 60(b) relief." *Dickerson*, 32 F.3d at 1118 (citations omitted).

negligence, gross negligence, or willful misconduct makes no difference, and will not be grounds for Rule 60(b) relief.

The Ninth Circuit held that an attorney's total disability due to illness constituted "excusable neglect" excusing the late filing of an appeal. *Islamic Republic of Iran v. Boeing Co.*, 739 F.2d 464 (9th Cir. 1984). But as the Seventh Circuit appears to have rejected the proposition that "neglect" of any kind can be grounds for equitable tolling, this opinion and others interpreting the "excusable neglect" standard of Rule 4(a)(5), F.R.A.P., are of little relevance.

No doubt because habeas petitioners are convicted criminals, habeas corpus law has become the most unforgiving branch of our jurisprudence. Seeking to winnow a large number of largely meritless petitions, courts have applied rigid procedural rules with little regard for their original context and justification. The accepted rationale for holding litigants responsible for their attorneys' blunders makes good sense in the context of civil litigation. Litigants choose their attorneys and can monitor their performance. If an attorney is negligent, the client can seek compensation through a malpractice action. Courts reason that the client and attorney should bear the liability for the attorney's blunders, not the adverse party. *See, e.g., 7108 West Grand Avenue,* 15 F.3d at 634-35; *Tolliver v. Northrop Corp.,* 786 F.2d 316, 319 (7th Cir. 1986).

A habeas petitioner, on the other hand, assuming he can hire an attorney at all, has a limited choice of poorly-compensated attorneys who must take a correspondingly large workload. A prisoner has little ability to monitor his attorney, and having paid one retainer he (more realistically, his family) is generally not in a position to hire another lawyer if the first one proves unresponsive. And if the attorney blunders, a malpractice action is virtually out of the question. The petitioner cannot prevail without proving damages, and to prove damages he must prove, at the least, that his habeas petition would have been granted. He may even have to overturn his conviction before bringing suit. *See Levine v. Kling,* 123 F.3d 580 (7th Cir. 1997)(under Illinois law, client cannot maintain legal malpractice suit against appellate defense

7

counsel until his conviction has been overturned). Given the AEDPA's restrictions on second or successive habeas petitions, this lies even farther from the realm of possibility.

The consequence of the rule is that no matter how trivial the additional burden upon the respondent of defending a petition brought a day or a month too late, no matter how severe the burden on the petitioner of a life sentence without hope of review, the burden of attorney negligence falls on the petitioner, even though he had no reasonable chance to prevent it and no chance at all to shift the loss to the attorney. In the case of a missed filing date (which is never a strategic decision), the cost of identifying such patent blunders is negligible and the prejudice to respondents nonexistent. One would think that a federal common law that has shown great sensitivity to balancing costs, risks and benefits when it comes to economic harms could show more sensitivity where prisoners' freedom is at stake.

Nevertheless, while this court urges the Court of Appeals to reconsider the rule that habeas petitioners are strictly liable for their attorneys' negligence, this court must follow the law as it understands it. The court reaffirms that it is clear from the face of the petition -- literally, the filing date on the first page -- that petitioner is not entitled to relief, and Habeas Rule 4 mandates summary dismissal. The petition is dismissed.[4]

IT IS SO ORDERED.

*Blanche M. Manning*
Blanche M. Manning, Judge
United States District Court

DATED: 2-14-02

---

[4] The court had originally proposed to grant a certificate of appealability limited to the question of equitable tolling. Respondent correctly points out that this court may not do so without also identifying a substantive issue for review. *Owens v. Boyd*, 235 F.3d 356, 358 (7th Cir. 2001). Without the trial transcript and exhibits the court cannot say that petitioner has made a substantial showing of the denial of a constitutional right; the court can only say the petition, substantively, is not frivolous or subject to dismissal under Rule 4. Accordingly, no certificate of appealability will issue, and petitioner must seek a certificate of appealability from the Court of Appeals.

8